UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| MATTHEW P.,<br>　　　　　*Plaintiff*,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of the<br>Social Security Administration,<br>　　　　　*Defendant*. | Civil No. 1:19-CV-01191-TSE-MSN |

## <u>REPORT AND RECOMMENDATION</u>

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 14, 19). Plaintiff Matthew P. ("plaintiff") seeks judicial review of the final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act"). Alternatively, plaintiff moves for an order remanding the instant appeal to the Social Security Administration ("SSA") for a new administrative hearing pursuant to 42 U.S.C. § 405(g). For the reasons stated below, the undersigned Magistrate Judge recommends that plaintiff's Motion for Summary Judgment (Dkt. No. 14) be DENIED, defendant's Cross-Motion for Summary Judgment (Dkt. No. 19) be GRANTED, and defendant's final decision be AFFIRMED.[1]

### I.　　Background

Plaintiff applied for disability insurance benefits on October 10, 2015. Pl. Br. (Dkt. No. 15) at 1.[2] Plaintiff originally alleged disability beginning April 22, 2014, but amended that date at his

---

[1] The Administrative Record ("AR") in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). (Docket no. 11). In accordance with those rules, this report and recommendation excludes any personal identifiers such as plaintiff's full name, social security number and date of birth (except for the year of birth), and the discussion of plaintiff's medical information is limited to the extent necessary to analyze the case.

[2] Confusingly, plaintiff's brief (Dkt. No. 15) starts at page number 3. The Court will refer to pages using the Bates

administrative hearing to reflect a disability onset date of January 1, 2016. *Id.* at 3-4; AR 2-4. Plaintiff alleged the following disabilities: traumatic brain injury, lumbar radiculopathy, degenerative disc disease on lumbar spine, slap tear of left shoulder, enlarged prostate, erectile dysfunction, ADHD, anxiety, dysthymia, persistent depressive disorder, schizophrenia, psychosis and PTSD. AR at 101.[3]

Plaintiff's application was initially denied on June 10, 2016 (*id.* at 101), and again upon reconsideration on August 17, 2016. *Id.* at 113. At plaintiff's request, a hearing was held on November 21, 2017, before Administrative Law Judge ("ALJ") Mark O'Hara in Charlottesville, Virginia. *Id.* at 41-70. Plaintiff, represented by an attorney, testified at the hearing, as did his wife, and a Vocational Expert ("VE"). *Id.* On September 26, 2018, the ALJ issued a decision finding that plaintiff was not disabled under the Act from January 1, 2016 through September 26, 2018. *Id.* at 33. Plaintiff requested review of the decision by the Appeals Council and, on July 13, 2019, the Appeals Council denied the request for review, finding no basis for review. *Id.* at 7-11.

Having exhausted his administrative remedies, plaintiff filed a Complaint with this Court on September 16, 2019, challenging the ALJ's decision. (Dkt. No. 1). Plaintiff filed a Motion for Summary Judgment (Dkt. No. 14) on June 1, 2020, including a Memorandum in Support of Plaintiff's Motion for Summary Judgment (Dkt. No. 15), to which the Commissioner filed a Cross-Motion for Summary Judgment (Dkt. No. 19) on July 2, 2020, along with a Memorandum in Support of Defendant's Motion for Summary Judgment and In Opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 20). Accordingly, the parties' motions are ripe for disposition.

---

Numbering created by the Court for docketing purposes and listed at the top of each page.
[3] Throughout the administrative record, plaintiff is referred to as having ADD and/or ADHD. Because plaintiff describes his disability as ADHD in his motion for summary judgment, Pl. Br. (Dkt. 15 at 2), the Court will use that terminology.

## II.      Evidence before the ALJ

Below is a summary of plaintiff's testimony before the ALJ, medical evidence of plaintiff's physical and mental impairments, and state agency opinion evidence.

### a.   Plaintiff's Testimony at the Administrative Hearing

At the hearing on November 21, 2017, plaintiff testified that he was 53 years old. AR at 48. He completed high school and two years of college, receiving an associate's degree in arts, and did not attend vocational training or other college. *Id.* at 48. From 1995 to 2015, plaintiff worked as a letter carrier, which entailed gathering, sorting, and delivering mail in a vehicle. *Id.* at 49. Plaintiff left his job because he was experiencing anxiety, panic attacks, memory loss, confusion, and difficulty staying on task. *Id.* at 49. Plaintiff additionally had difficulty lifting, leaning, and twisting, which affected his ability to handle mail. *Id.* at 50. Plaintiff testified that he now has disability retirement from his job as a letter carrier. *Id.* at 60.

Plaintiff testified about two car accidents that had impacted him physically and mentally. The first accident occurred on October 5, 2012. *Id.* at 59. Plaintiff testified that he was rear-ended by a car going 50 miles per hour and suffered injuries to his back and left shoulder and a traumatic brain injury. *Id.* at 59-60. The second, more recent, accident occurred on December 29, 2015, aggravating his back injury and aggravating his PTSD from the first accident. *Id.* at 59-60.

Plaintiff testified that he had been seeing a doctor for his back and attending physical therapy but declined cortisone shots as treatment. *Id.* at 51. The medication he was prescribed for his back did not help with the pain. *Id.* He reported numbness in his left leg and noted that his neck pain had resolved but his shoulder injury had residual effects. *Id.* 51-52.  Plaintiff testified that he can scratch his back, wash his hair if leaning forward, and reach into cabinets. *Id.* at 52. He does household chores but has difficulty vacuuming because of his back. *Id.* at 54. He testified that he

goes to AA meetings two to four times a week, goes to the grocery store with his wife, and drives twice a week. *Id.* at 57. He noted that he prepares and focuses before driving. *Id*. at 57.  He also testified that he was 5'9" and weighed 202 or 203 pounds. *Id*. at 55-56.

Regarding his various mental impairments, plaintiff testified that his worst impairment was PTSD. *Id.* at 52. He has difficulty staying on task and remembering things after an hour. *Id.* He stated that he is not able to follow instructions because of a lack of concentration and distractibility. *Id.* at 53. He also reported difficulty with crowds and a sense of "impending doom." *Id.* at 54. He noted that he has a hallucination of a man named Oscar who helps with his anxiety, but he feared that the hallucination would say something "that's not right." *Id.* at 55. Plaintiff testified that he attends cognitive therapy once a week, sees a neurologist every six months, primary care physical annually, and had stopped seeing a doctor for his back but thought he might return. *Id.* at 58.

Plaintiff's wife also testified as a witness before the ALJ. *Id.* at 61. Plaintiff and his wife have been married 10 years. *Id.* His wife testified that, after the second car accident, plaintiff had a "drastic increase in his anxiety" and has a difficult time being in crowds or in a car. *Id.* at 62. She additionally noted that his memory problems require her to repeat conversations or write things down for him, and that he frequently forgets appointments or forgets to do tasks around the house she has requested. *Id.*

In testimony from the VE, it was established that plaintiff worked as a letter carrier, which is a job requiring medium strength level, is semiskilled and does not have skills transferable to sedentary work. *Id.* at 65. The ALJ posed the following hypotheticals for the VE to consider. The hypothetical person has plaintiff's same age, education, and past jobs; can perform the full range of light work; and retains the concentration, persistence and pace to perform simple, repetitive work that does not require working with the public. *Id.* at 66. First, the ALJ asked the VE if this

person would be able to perform the claimant's past medium work. *Id.* The VE responded that they would not be able to perform the past medium work. *Id.* The ALJ then asked if there would be other jobs in the region or national economy for said person. *Id.* The VE responded affirmatively that this person could perform the following jobs: small parts assembler, hand packager, shipping and receiving weighed. *Id.*

Next, the ALJ asked the VE to consider the same hypothetical person, except that the person could only occasionally push, pull, and reach overhead with the left upper extremity. *Id.* at 67. The VE stated that the same jobs would remain but conceded that the *Dictionary of Occupational Titles* does not specifically address working with the public or push, pull and use of one extremity, thus the VE's answer was based on experience and expertise. *Id.*

The ALJ then presented a hypothetical person who was the same age and vocational profile and had no transferable skills, and asked the VE whether such a person would be found disabled if limited to sedentary work. *Id.* at 68. The VE responded that the person would be found disabled. *Id.* The ALJ then asked whether there would be work for such a person whose impairments made him incapable of doing competitive work on a sustained basis for eight hours a day, five days a week. *Id.* The VE responded that there would be no work available. *Id.* The ALJ then asked if there would be jobs for a person who was unable to carry out the basic mental demands of competitive work—to carry out and remember simple instructions, use judgment in making work related decisions, respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting. *Id.* The VE responded that there would be no jobs. *Id.* The ALJ further inquired if there would be jobs if an individual's impairment was such that they had to miss more than one day of work a month. *Id.* at 68-69. The VE responded that there would not be. *Id* at 69. This was again based on experience and expertise, as the *Dictionary of Occupational*

*Titles* does not specifically address absenteeism. *Id.*

Plaintiff's counsel asked the VE if an individual was unable to accept criticism from a supervisor would that limit the availability of unskilled work. *Id.* The VE responded that it would eliminate employment. *Id.* Counsel also asked whether the inability to maintain attention and concentration in two-hour increments and distraction of greater than six minutes per hour would become an "off task" issue; the VE confirmed that it would. *Id.*

### b.  Medical Evidence of Alleged Physical Impairments

Following his second car accident, on January 5, 2016, plaintiff visited the Blue Ridge Orthopaedic and Spine Center reporting low back pain that radiated down his left leg. *Id*. at 378. The report notes that he had a history of back problems and the record confirms previous visits for back treatment before the accident. *Id.* at 278-385. Plaintiff was observed as having "no apparent limitations in mobility and normal gait" with "full weight bearing status" on both sides. *Id*. at 381. An MRI revealed disc degeneration at L3-4, L4-5 and L5-S1, no spondylosis, no scoliosis, and no compression fractures. *Id.* On this day, he was referred to physical therapy and told to remain off work. *Id.* at 382. He continued to visit Blue Ridge Orthopaedic and Spine Center on January 27, February 26, April 8, May 10, May 23, and June 24, 2016, where he reported he still felt pain after physical therapy and medication. *Id.* at 366-377, 430, 472, 480. The record shows that plaintiff was approved for epidural injections but never chose to receive them. *Id*. at 480.

The record includes evidence of plaintiff's attendance at physical therapy on a biweekly basis from March 29, 2016, to August 3, 2016. *Id.* at 493, 495. His diagnosis at that time was "radiculopathy, lumbosacral region," "strain of muscle, fascia and tendon of lower back, initial encounter," and "sprain of ligaments of lumbar spine, initial encounter." *Id.* at 497. These visits included hip mobility exercises and "bilateral LE stretching," and plaintiff reported soreness after

performing tasks including mowing, "weed eating," and distance walking. *Id.* at 493, 499, 503.

### c.  Medical Evidence of Alleged Mental Impairments

The medical evidence in the record reflects evidence of intermittent formal mental health treatment. Plaintiff reported suffering from anxiety, PTSD and ADHD. Plaintiff attended weekly therapy with Shannon L. Folz at Prince William Family Counseling from February 3, 2015 to May 21, 2015, prior to the stated onset of disability. *Id.* at 270. The therapy ended when the therapist left the clinic or area. *Id.* at 269. At that time, it was reported that plaintiff had made minimum or moderate improvement and that he was encouraged to continue therapy to help with anxiety and triggers. *Id.*

Plaintiff received a neuropsychological evaluation by Dr. David W. Hebda, Licensed Clinical Psychologist and Neuropsychologist, on August 24, 2015, before the alleged onset of disability. *Id.* at 292. The evaluation notes there was an elevated "inconsistency" score, meaning there were "some idiosyncratic responses" that could have affected the evaluation. *Id.* at 294. Plaintiff also showed an elevated "negative impression score" indicating that he "endorsed items that portray him in an especially negative or pathological manner." *Id.* In all capital letters, the doctor interprets these elevated scores to mean that the test results involve "considerable distortion" and "are unlikely to be an accurate reflection of [plaintiff's] clinical status," rather it only depicts a self-description. *Id.* The report nonetheless describes plaintiff as having a general cognitive ability in the average range, attention, concentration, and mental control in the average rage, memory in the average range. *Id.* at 296-97. Dr. Hebda observed memory defects, presenting with a low-average score in "attentional skills, auditory-verbal information," "verbal learning and memory, immediate" and "visual memory, delayed." *Id.* at 299-300. However, he noted strengths in "information processing speed, verbal information," "attentional skills, visual information,"

"verbal memory, delayed" and "visual memory, intermediate." *Id.* at 300. After again warning that the following would be an inaccurate reflection of plaintiff's clinical status, Dr. Hebda noted that plaintiff had thinking "often associated with an active psychotic episode" and that his thought was likely to be "marked by confusion, distractibility, and difficulty concentrating." *Id.* at 301. Plaintiff reported "difficulties consistent with a significant depressive experience," but Dr. Hebda found "relatively few psychological signs of depression." *Id.*

Plaintiff additionally was seen at the Prince William Neuroscience Center by Dr. Hoda Hachicho on a regular basis following the first accident and before the second accident. *Id.* at 309-343. The record shows a visit to Dr. Hachicho following the second accident on February 24, 2016. *Id.* at 336-343. Dr. Hachicho reported that plaintiff had "fair control" of his ADD, anxiety and PTSD symptoms with his current medication regimen. *Id.* at 338. The doctor noted that plaintiff was "oriented to person, place, problem, and time," that his mood was "appropriate and happy." *Id.* at 338. The neuropsychological evaluation given on that day stated plaintiff's concentration, social interaction, and adaption skills were predominately "poor/none" or "fair" indicating activities involving those skills would be partially or totally precluded. *Id.* Dr. Hachicho further indicated that a routine, repetitive, simple entry level job would serve as a stressor and that it was expected that plaintiff would be absent more than four days a month from work. *Id.* at 342. Plaintiff saw Dr. Hachicho for a follow up on May 31, 2016, where he reported he was "pleased with mood control" and that Adderall improved his concentration. *Id.* at 420.

Plaintiff was seen by his physician, Dr. Abdul Faisal, on March 2, 2016. *Id.* at 447. He reported an improvement in mood and that he was not hallucinating anymore but still saw his "imaginary friend Oscar." *Id.* Plaintiff reported that his PTSD symptoms had increased since his recent car accident. *Id.* Dr. Faisal observed that he exhibited abnormal recent memory and was

inattentive. *Id.* On a subsequent visit on April 18, 2016, Dr. Faisal reported that, though plaintiff was experiencing hallucinations of "Oscar," his "reality testing remains fully intact even when he experiences this hallucination" and the use of Abilify had helped reduce the frequency and severity of hallucinations. *Id.* at 454. Dr. Faisal also noted that he was attentive and alert and oriented to person, place and time. *Id.*

On May 31, 2016, plaintiff visited Dr. Faisal and reported that he was able to focus and concentrate most days, but at times got easily distracted. *Id*. at 461. Upon examination, Dr. Faisal noted that plaintiff was not delusional and had intact reality testing but was positive for confusion, decreased concentration, and visual hallucinations. *Id.* On July 14, 2020, plaintiff again saw Dr. Faisal, who observed plaintiff to be positive for confusion, decreased concentration, dysphoric mood, and sleep disturbance, but noted that he was not anxious, paranoid, or delusional and that his cognition and memory were not impaired. *Id.* at 469.

Plaintiff returned to therapy at Prince William Family counseling on August 1, 2016, and continued until he was discharged on December 20, 2016, because he stopped making appointments. *Id.* at 606. The discharge paperwork notes he made moderate improvement and that plaintiff met his treatment goals. *Id.*

After December 2016, the only other medical evidence in the record relates to a mental health assessment by Dr. Barbara Novak, performed on February 13, 2018 as a second opinion examination for plaintiff's claim for worker's compensation. *Id.* at 656-664. At that time, plaintiff's chief complaint was anxiety and a fear of driving. *Id.* at 656. Dr. Novak described plaintiff as having good eye contact, normal gait and station, and normal speech, tone and affect, and described his "thought processes and associations" as "relevant and goal directed." *Id.* at 661. She noted that plaintiff's immediate memory was good and remote memory was fair, but his

abstract thinking and judgment seemed impaired by impulsivity and a sense of panic that Dr. Novak considered a permanent aggravation, from which she did not expect recovery. *Id.* at 661-63.

### d. State Opinion Evidence

Dr. Leslie E. Montgomery, a state agency medical consultant, assessed plaintiff's memory as within the average range and his reading, spelling, and math at the low average range, concluding that plaintiff "is able to do simple work." AR at 76. Dr. Montgomery also noted that plaintiff "may have difficulty following detailed instructions but [is] able to follow simple instructions." *Id.* at 79. Dr. Eugene Noland, another state agency medical, reviewed the record evidence and found that plaintiff was capable of performing light work. *Id.* at 81. Dr. Noland also concluded that the "symptom imposed limitations appear to be partially credible" and that "[t]he severity of the symptoms and the alleged effect(s) on function are not entirely consistent with the total medical and non-medical evidence . . . some symptoms appear to be disproportionate to the severity and duration that would be expected." *Id.* at 77. Additionally, Dr. Robert McGuffin, a state agency medical consultant at the reconsideration level, reviewed the evidence in the record and found that plaintiff was capable of performing light work. *Id.* at 96. The ALJ gave the state agency medical consultants' opinions great weight because they were consistent with the medical evidence of record. *Id.* at 31.

### II.    Disability Evaluation Process

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the

claimant must have a severe impairment that makes it impossible to do past relevant work or any other substantial gainful activity ("SGA") that exists in the national economy. *Id.*; *see also Heckler v. Campbell*, 461 U.S. 458, 460 (1983).  Determining whether an applicant is eligible for disability benefits under the SSA entails a "five-part inquiry" that "asks: whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the SSA's official Listing of Impairments]; (4) the claimant can perform [his] past relevant work; and (5) the claimant can perform other specified types of work."  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). Before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), meaning the most that the claimant can do despite his or her physical or mental limitations. C.F.R. §§ 416.920(h), 416.945(a)(1).

### a.   The ALJ's Decision

On September 26, 2018, the ALJ issued a decision finding plaintiff not disabled and denying his application for benefits. AR at 21. Under the first step, the ALJ found that plaintiff did not engage in any SGA from his alleged onset date of January 1, 2016. *Id.* at 24. At step two, the ALJ found that plaintiff had the following severe impairments: post-traumatic stress disorder, attention deficit disorder, a spine disorder, and borderline obesity. *Id.* The ALJ further found that plaintiff's other medical conditions, alone or in combination, to be non-severe impairments. *Id.* Under step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the SSA's official Listing of Impairments. *Id.* The ALJ also noted that the plaintiff did not claim that he met one of the listed impairments. *Id.*

Before proceeding to steps four and five, the ALJ determined plaintiff's RFC. In doing so, the ALJ considered all reported symptoms and the extent to which those were reasonably consistent with objective medical evidence and opinion evidence. *Id.* at 27, 29. After considering the entire record, the ALJ concluded that plaintiff has the RFC "to perform at least light work, as defined in 20 C.F.R. 404.1567(b), that involves only occasional climbing of ladders, ropes, or scaffolds and other postural activities no more than frequent (climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling), while retaining the persistence, concentration, and pace to perform simple, repetitive work." *Id.* at 27.

Under step four, the ALJ found that plaintiff is unable to perform his past relevant work as a letter carrier, which the VE had categorized as semiskilled (SVP 4), medium exertion and which the plaintiff would be unable to perform with a light residual functional capacity. *Id.* at 32. However, under step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that claimant can perform." *Id.* Based on the foregoing analysis, the ALJ concluded that plaintiff was not disabled as defined by the Act. *Id.* at 33.

### b. Appeals Council Review

On July 13, 2019, the Appeals Council denied plaintiff's request for review, finding no basis for review and declaring the ALJ's decision to be the final decision of the Commissioner of Social Security. *Id.* at 7-11.

### III. Standard of Review

In reviewing a decision of the Commissioner, district courts are limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 589. When evaluating whether the Commissioner's decision is supported by substantial evidence, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1996). "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Id.* (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).  If supported by substantial evidence, the Commissioner's findings as to any fact are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *see also Richardson*, 402 U.S. at 401.

Although the standard is high, when the ALJ's determination is not supported by substantial evidence on the record or when the ALJ has made an error of law, the district court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In evaluating whether the ALJ made an error of law, the Fourth Circuit applies a harmless error analysis in the context of social security disability determinations. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015). The harmless error doctrine prevents a remand when the ALJ's decision is "overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" and a remand would be "a waste of time." *Williams v. Berryhill*, 2018 WL 851259, at *8 (E.D. Va. Jan. 18, 2018) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 Fed. App'x 65, 67 (4th Cir. 2014) (per curium)). An ALJ's error may be deemed harmless when a court can conclude on the basis of the ALJ's entire opinion that the error did not substantively prejudice the claimant.

*See Lee v. Colvin*, 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016). When reviewing a decision for harmless error, a court must look at "[a]n estimation of the likelihood that the result would have been different." *Morton-Thompson v. Colvin*, 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411-12 (2009)).

## IV.     Analysis

Plaintiff argues that the ALJ erroneously assessed his Residual Functional Capacity. Pl. Br. (Dkt. No. 15) at 3. Defendant moves for summary judgment on the basis that the ALJ's decision is supported by substantial evidence in the record. Def. Br. (Dkt. No. 20) at 12. For the reasons that follow, the undersigned recommends denying plaintiff's Motion for Summary Judgment, granting defendant's Cross-Motion for Summary Judgment, and affirming the ALJ's decision.

Plaintiff specifically argues that, in the RFC assessment, the ALJ (1) failed to consider limitation on concentration or task persistence, (2) failed to consider the combined effect of plaintiff's impairments, (3) failed to consider the state agency experts' opinions that plaintiff may have difficulty following detailed instructions, (4) did not appropriately weigh the medical opinions, (5) incorrectly credited the opinion of Dr. Hebda, and (6) erroneously evaluated the opinion of Dr. Hachicho. Pl. Br. (Dkt. No. 15). at 3-15.  Each of these arguments is addressed in turn below.

### a.     Limitation in Concentrating, Persisting, or Maintaining Pace

Plaintiff first argues that the ALJ failed to properly include plaintiff's limitations on concentration or task persistence in his RFC. Pl. Br. (Dkt. No. 12) at 6-7. Plaintiff argues that the ALJ's limitation of plaintiff to the "performance of simple, repetitive work" was insufficient. *Id.* at 6. In support of his argument, plaintiff relies on *Macio v. Colvin*, in which the Fourth Circuit stated that "the ability to perform simple tasks differs from the ability to stay on task." 780 F.3d

632, 638 (4th Cir. 2015). Plaintiff also relies on *Perry v. Berryhill,* where the ALJ was found to have erroneously accounted for "limitations in concentration, persistence and pace" only by restricting the plaintiff to "unskilled work." 765 Fed. Appx. 869, 872 (4th Cir. 2019). In *Perry*, the Court found that the assessment lacked the "analysis needed" because it did not create a "narrative discussion describing how the evidence supports each conclusion." *Id.* at 871 (citing *Mascio*, 780 at 636-37).

Unlike the ALJs in *Macio* and *Perry*, here, the ALJ did not limit plaintiff to simple tasks without explanation, but rather explained that his limitations on concentration or task persistence did not affect his ability to work. As defendant highlights, the Fourth Circuit in *Shinaberry v. Saul* clarified its holding in *Mascio*, noting that the Court did not "impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." 952 F.3d 113, 121 (4th Cir. 2020). Rather, in *Shinaberry*, it was sufficient that the "ALJ discussed in detail the psychological evaluations" to explain "why the mental limitation to simple, routine, and repetitive tasks accounted for" plaintiff's limitations. *Id.* The Court held in *Macio* that a sufficient explanation would be the ALJ finding "that the concentration, persistence, or pace limitation does not affect [plaintiff's] ability to work." *Id.* (citing *Macio*, 780 F.3d at 638).

In this case, the ALJ sufficiently discussed plaintiff's testimony and the medical evidence pertaining to limitations in concentration. The ALJ's decision notes "the evidence of record shows that the claimant was distractible at times but with fair concentration" and that while there was "evidence of a thought disorder," plaintiff "was often observed with appropriate thought content and a goal directed thought process." AR at 26. Citing the medical evidence at exhibits 1A, 3A 13F and 18F, the ALJ concluded there was "little evidence to suggest more than a moderate

limitation with regard to attention and concentration for basic tasks." *Id.* The ALJ also noted that plaintiff's ADHD symptoms were under "fair control" with his current medications and that he had a "normal mental status examination." *Id.* at 28. Accordingly, the undersigned finds that the ALJ's decision was supported by the medical record and sufficiently explained how he considered the plaintiff's limitations in concentrating, persisting, and maintaining pace.

### b.  Combined Effect of Impairments

Second, plaintiff argues that the ALJ failed to determine the "cumulative effects of all of the plaintiff's impairments." Pl. Br. (Dkt. No. 15) at 7. The Fourth Circuit has held that "the Secretary must evaluate the combined severity of multiple impairments 'without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" *Cook v. Heckler*, 783 F.2d 1168, 1174 (4th Cir. 1986) (citing C*ombs v. Weinberger*, 501 F.2d 1361, 1363 (4th Cir. 1974); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968)). In *Cook*, the ALJ made "wholly independent evaluations" of plaintiff's impairments. *Id.* Plaintiff also relies on *Hines v. Bowen*, which noted that "an ALJ must consider the combined effect of a claimant's impairments" and "adequately explain his or her evaluation of the combined effect of impairments." 872 F.2d 56, 59 (4th Cir. 1989). However, *Hines* makes clear that the "combined effect rule merely elaborates upon the general requirement that an ALJ [must] explicitly indicate the weight given to relevant evidence." *Hines*, 872 F.2d at 59.

Unlike in *Cook*, the ALJ here did not make wholly independent evaluations but rather considered the interplay of impairments. Plaintiff argues that the combination of impairments had a significant impact on ability to perform work related activities, but does not provide any indication of why that would be the case or what the ALJ neglected to consider. The record reflects that in determining which impairments were severe, the ALJ considered "all other medical

conditions found in the record, alone or in combination." AR at 24. The ALJ noted that he considered the "exacerbatory impact of the claimant's borderline obesity" and found the "evidence does not support a finding that the claimant's weight compounded his other physical impairments." *Id.* at 25. He again noted, when discussing the plaintiff's RFC, that "obesity may have an adverse impact on co-existing impairments" and detailed those potential impacts. *Id.* at 27. With respect to mental impairments, the ALJ considered each "singly and in combination." *Id.* The ALJ's frequent reference to considering impairments in combination is sufficient to meet the standard in *Hines.* Further, there is no indication from the record or plaintiff's argument that further consideration of the combination of impairments would have resulted in a different finding.

### c.    State Agency Physicians' Opinions

Third, plaintiff claims that the ALJ erroneously evaluated the opinions of the state agency physicians by failing to consider their determinations that plaintiff "would" have difficulty following detailed instructions. Pl. Br. (Dkt. No. 15) at 9.

The Fourth Circuit has held that an ALJ is not required to base an RFC assessment on a specific medical opinion, but instead on the record as a whole, including subjective complaints, objective medical evidence, and medical source opinion. *See Felton-Miller v. Astrue*, 459 Fed. App'x 226, 230-31 (4th Cir. 2011). Moreover, this circuit has recognized that an ALJ is entitled to rely on the opinion of a reviewing physician or psychologist when it is consistent with the other evidence in the record. *See, e.g.*, *Johnson*, 434 F.3d at 656-57 (finding that substantial evidence "supports the ALJ's reliance on Dr. Starr's opinion" because his opinion was consistent with other doctors' opinions). It is the ALJ's exclusive duty, as a fact finder, to make an RFC assessment. *Astrue*, 459 Fed. App'x at 230-31; *see also* 20 C.F.R. § 404.1546(c).

Plaintiff alleges that the ALJ failed to consider testimony from state agency physicians that

plaintiff "would" have difficulty following detailed instructions. Pl. Br. (Dkt. No. 15) at 9. Notably, the physicians actually reported that plaintiff "*may* have difficulty following detailed instructions but able to follow simple instructions." AR at 80 (emphasis added). However, these same state experts, upon considering that plaintiff may have difficulty with detailed instructions, concluded that plaintiff was capable of simple work. The VE also testified that a person with plaintiff's physical impairments, age, education and experience, limited to simple, repetitive work, would have jobs available in the economy. AR at 66.

While the ALJ gave the state experts great weight, the ALJ is not required to address every comment made by the experts. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d at 865 (4th Cir. 2014); *Smith v. Comm'r*, 2010 WL 1640271, at *3 (E.D. Va. Apr. 22, 2010) ("While an ALJ is required to consider all of the relevant evidence in the record, there is no requirement that the ALJ expressly discuss each piece of that evidence. . . . Indeed, such a requirement, if it existed, would impose an insuperable burden on the adjudicatory system of the Social Security Administration.") (citation omitted). Rather, it is assumed that in giving weight to the state expert's reports, the ALJ considered them in their entirety. The Court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig*, 76 F.3d at 589; *see also King*, 599 F.2d at 599 (providing that it is not the role of the court to try the case de novo when reviewing disability determinations). Therefore, the undersigned finds that the ALJ appropriately weighed the state agency physicians' opinions.

### d.     Worker's Compensation Opinions

Fourth, plaintiff asserts that the ALJ applied an improper standard of review for the opinions of Dr. Sutton and Dr. Novak, psychiatrists who evaluated plaintiff for his worker's compensation claim. Pl. Br. (Dkt. No. 15) at 10.

The ALJ noted that evidence resulting from applications for other disability benefits can become part of the Social Security record, but a determination of disability is not binding on a Social Security disability decision. AR 30-31. As defendant notes, the standard for determining disability for worker's compensation differs from the standard of the Social Security Administration. *See Yost v. Barnhart*, 79 F. App'x 553, 556 (4th Cir. 2003). The ALJ may consider the non-binding worker's compensation disability finding alongside underlying medical evidence and weigh the evidence as he sees fit. Here, the ALJ did not dismiss the reports of these doctors but gave them "little weight." AR at 31. Defendant is correct that the "ALJ is not required to mechanically recite each factor set forth in 20 C.F.R. § 404.1527(c) (listing factors to consider when weighing medical opinions)." Df. Br. (Dkt. No. 20) at 22. The ALJ need only be clear how his conclusion was made. *See Bishop*, 583 F. App'x at 67 ("While the ALJ did not explicitly analyze each of the . . . factors on the record, the ALJ was clear that he concluded that the doctor's opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons."). Again, the Court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig*, 76 F.3d at 589; *King*, 599 F.2d at 599. It is clear to this reviewing Court that the ALJ did not put great weight on the worker's compensation opinions because the doctors applied different standards of review for the worker's compensation inquiry, resulting in opinions inconsistent with the other medical evidence in the record.

### e.  Dr. Hebda's Opinion

Fifth, plaintiff alleges that the ALJ erroneously evaluated the opinion of Dr. David Hebda. Pl. Br. (Dkt. No. 15) at 13. Specifically, plaintiff claims that the ALJ's choice to give "some weight" to Dr. Hebda's opinion is "so vague as to be meaningless." Pl. Br. (Dkt. No. 15) at 14. Plaintiff further contends that the ALJ should have evaluated other aspects of Dr. Hebda's report and explained its impact on the RFC assessment. *Id.*

The "ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015). Plaintiff's argument that giving "some weight" is too vague does not accurately reflect the ALJ's decision. The ALJ properly elaborated that he decided to give some weight to Dr. Hebda's report because, while it took place *before* the relevant time period, it was consistent with "the medical evidence record as a whole." AR at 30. The ALJ appears to have properly considered the report in its entirety, noting that Dr. Hebda found plaintiff had "mild difficulty acquiring verbal information" but giving more weight to his ultimate conclusion that "the claimant was in the average range for verbal comprehension, perceptual reasoning, cognitive ability, ability to sustain attention, and memory functioning." *Id.* This explanation is sufficient and need not be disrupted.

Further, if more weight had been given to Dr. Hebda's opinion, it would have likely worked against the plaintiff, as much of the report was limited by a statement in all capital letters, appearing twice and warning, "THE TEST RESULTS POTENTIALLY INVOLVE CONSIDERABLE DISTORTION AND ARE UNLIKELY TO BE AN ACCURATE REFLECTION OF MR.[P]'S OBJECTIVE CLINICAL STATUS—THE FOLLOWING INTERPRETATION IS PROVIDED ONLY AS AN INDICATION OF MR. [P]'S SELF DESCRIPTION." *Id.* at 294, 301. This warning proceeds the entirety of the passages that plaintiff provides from the report, although plaintiff does not note the words of caution in their brief. While this Court finds that the ALJ's assessment of the report was adequate, even if more consideration were required, the report weighs against plaintiff, rendering any error harmless as to the ALJ's ultimate decision.

### f.    Dr. Hachicho's Opinion

Sixth, plaintiff asserts that the ALJ erroneously evaluated the opinion of plaintiff's neurologist, Dr. Hoda Hachicho. Pl. Br. (Dkt. No. 15) at 14. Specifically, plaintiff refers to a questionnaire from February 24, 2016, that scores skills associated with understanding, memory, concentration, persistence social interaction, adaption, and making personal-social adjustments as very good, good, fair or poor. AR at 340. Plaintiff scored fair to poor in all categories except ability to maintain personal appearance, for which he received a rating of "good." *Id.* at 340-41. The questionnaire additionally indicates that a simple entry-level job would be a stressor and that plaintiff's symptoms would frequently interfere with attention and concentration and likely cause an absence of more than four days per month. *Id.*

Again, this Court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion unless the ALJ has failed to provide sufficient reasoning or "dredged up specious inconsistencies." *Dunn*, 607 F. App'x at 267. Here, the inconsistency between this medical assessment and the other medical evidence on record is not specious. An ALJ is entitled to rely on the opinion of a reviewing physician or psychologist when it is consistent with the other evidence in the record. *See, e.g.*, *Johnson*, 434 F.3d at 656-57 (finding that substantial evidence supports the ALJ's reliance on physician's opinion where it was consistent with other doctors' opinions). Here, other psychological evaluations are not consistent with Dr. Hachicho's evaluation and it was therefore the ALJ's prerogative as to how much weight it should be afforded. AR at 30.

Plaintiff asserts that more weight should have been given to Dr. Hachicho's report because the state agency physicians found the report to be supported by the objective evidence. *Id.* at 77. However, the state agency physicians ultimately concluded that plaintiff was capable of simple work, contrary to Dr. Hachicho's report and in accord with the ALJ's finding. *Id.* at 81. Medical

evidence from Prince William Family Counseling (*id.* at 606) and plaintiff's physician, Dr. Abdul Faisal (*id.* at 447, 454, 461, 469), which predominate the record, do not indicate a mental impairment as extreme as what Dr. Hachicho described. For these reasons, this reviewing Court is not entitled to overturn the ALJ's weighing of the medical evidence.

## V.    Recommendation

For the reasons set forth above, the undersigned recommends that plaintiff's Motion for Summary Judgment (Dkt. No. 14) be DENIED, that defendant's Cross-Motion for Summary Judgment (Dkt. No. 19) be GRANTED, and that the final decision of defendant be AFFIRMED.

## VI.    Notice

The parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to timely file objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

                                        /s/
                        _____
                        Michael S. Nachmanoff
                        United States Magistrate Judge

November 23, 2020
Alexandria, Virginia